UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JUAN PINEDA,

                Plaintiff,

      v.

PLAZA HYUNDAI LTD, AFFINITY FEDERAL
CREDIT UNION and HYUNDAI CAPITAL
AMERICA, INC. d/b/a HYUNDAI MOTOR
FINANCE,

                Defendants.

Case No.:

## STATEMENT OF CLAIM

Plaintiff, Juan Pineda ("Plaintiff"), brings this action to secure redress against unlawful, unfair, abusive and deceptive lending and business practices engaged in by defendant, Plaza Hyundai Ltd. (the "Dealer"), Affinity Federal Credit Union ("Affinity") and Hyundai Capital America, Inc. d/b/a Hyundai Motor Finance, ("HMF" and together collectively with the Dealer and HMF, "Defendants") relating to an automobile lease transaction and alleges as follows:

## NATURE OF THIS ACTION

1.    Plaintiff, works with the US Border Patrol, was defrauded by the Dealer, a car dealership, when, after leasing Plaintiff a vehicle, the Dealer illegally and without justification repossessed that vehicle.  Additionally, without a permissible purpose, after completion of the lease transaction,  The Dealer continued to pull Plaintiff's credit reports causing damage to Plaintiff.

2.    In this action Plaintiff seeks, among other things, statutory and actual money damages against Defendants for, *inter alia*, violations of the Federal the

Consumer Lease Act, 15 U.S.C. § 1667, et seq. ("CLA") and its implementing regulations, 12 C.F.R. § 1013, *et seq.*, the Motor Vehicle Retail Leasing Act, NY CLS Pers P § 337, et seq the federal Fair Credit Reporting Act ("FCRA"), 15 USC § 1681a *et seq.*, New York General Business Law §§ 349, and common law claims for fraud, bailment and conversion.

3. This action arises out of an often-fraudulent practice in the automobile sales and leasing industry called a "yo-yo sale" or a "spot delivery." Under this scheme, the auto dealer sells or leases a car to the consumer "on the spot" without regard to whether any third party will agree to assignment of the car note or lease. Typically, the consumer will sign all necessary paperwork at the behest of the dealer and will receive temporary or transferred tags, a set of keys and possession of the automobile. The consumer leaves the dealership believing he or she completed the transaction.

4. It is important to note that as the originating creditor, the dealer has participated in setting the leasing terms to be stated in a lease agreement. As the originating creditor, the Dealer may receive payments from the consumer, and is under no obligation to assign the lease.

5. In a "yo-yo sale" the dealer has no promise from or commitment to a third-party assignee, leaving the dealer free to shop the transaction terms around for the highest profit to the dealer or not assign it to a third party at and all, and instead to keep all the profits from the financing for itself.

6. In some cases, such as the instant case, after the dealer has sent the consumer on his or her way with the vehicle, the dealer is unwilling to accept the terms that the various lenders are willing to pay for an assignment of the lease; or it cannot find

2

a third-party lender willing to accept the terms of the transaction that it agreed to with the lessee, or it wants to make more money on the deal.  Now that the lessee has had the vehicle for a while, shown it to family and friends, implemented life plans relying on the vehicle, and is emotionally committed to it, the dealer advises the lessee that the lease did not go through, and tries to get the lessee to agree to different terms than he or she originally agreed to, that it will cost the lessee more and create a greater profit for the dealer, but may make the lease acceptable to third party lenders.   This is where the term "yo-yo" comes from.  Because the dealer cannot make enough money selling the paper, the dealer often attempts to undo or cancel the transaction and yank the car back from the lessee, telling the lessee that he or she must come in and sign a new agreement on less favorable terms or it may repossess the vehicle.

7. Importantly, the dealer, as the original creditor, does not send the consumer any written notice of adverse action as it is legally required to do under the FCRA.

8. This practice, "spot delivery/yo-yo selling", in many cases such as this one, violates the the FCRA and the CLA, New York General Obligations Law, and constitutes fraud.

## PARTIES

9. Plaintiff, a natural person, currently resides in  residing in San Antonio, TX, but resided in Queens County, New York at the time of the transaction at issue here.

10. Upon information and belief, the Dealer, a car dealership, is a domestic corporation organized and existing under the laws of the State of New York with a place of business located at 2740 Nostrand Ave., Brooklyn, NY 11210.

11. Upon information and belief, Affinity is, was and still is a Credit Union duly chartered under the laws of the United States of America and as such is authorized to do business in the State of New York.

12. Upon information and belief, HMF is, was and still is a corporation organized and existing under the laws of the State of its incorporation and is duly authorized to conduct business in the State of New York or qualifies as a "foreign bank" pursuant to the relevant statues, duly authorized to conduct business in the State of New York and having an office and place of business located at PO Box 20825, Fountain Valley, California 92728.

## FACTS

The Vehicle Lease

13. Considering the lease of a new vehicle, on October 18, 2022, Plaintiff visited the Dealer's showroom and agreed to lease a 2023 Hyundai Elantra SD, Vehicle Identification Number KMHLR4AF0PU415394 (the "Vehicle").

14. As part of the transaction, Plaintiff truthfully completed a credit application temporarily authorizing the Dealer to apply for credit on his behalf.

15. As part of the transaction, it was agreed that Plaintiff would trade-in a 2018 Honda Civic (the "Trade-In"), Plaintiff's current vehicle, for which $9,813.00 was still owed under a car loan, that the Dealer would pay-off the $9,813.00 balance the remaining equity of which would be applied as an offset to the cost of lease.

16. Additionally, Plaintiff agreed to make a $4,200.00 down payment towards the cost of the lease.

17. To memorialize the transaction, Plaintiff and the Dealer executed a series of documents including a "Motor Vehicle Lease agreement (the "Lease Agreement").

18. The Dealer informed Plaintiff that the Lease Agreement had been approved by lender Affinity.

19. Every step of the contract preparation was performed by the Dealer.

20. Plaintiff purchased motor vehicle insurance for the Vehicle, license plates were affixed and Plaintiff left the Dealer's showroom in the Vehicle, believing the Lease Agreement was complete.

The Yo-Yo/Spot Delivery Fraud

21. On October 27, 2022, Plaintiff moved from New York to San Antonio Texas to begin his new job working with the United States Border Patrol.

22. On November 27, 2022, Plaintiff was notified by the Dealer that the transaction had not been approved and that in order to keep the Vehicle, a new deal would need to be reached.

23. Plaintiff informed the Dealer that the only new deal he was willing to make would be to return the Vehicle in exchange for a full refund of the Downpayment in and return of the Trade-In. Plaintiff's offer was not immediately acceptable to the Dealer.

24. Plaintiff learned that on December 5, 2022, without Plaintiff's knowledge or consent, the Dealer submitted Plaintiff's credit application to Hyundai Motor Finance.

25. The Dealer continued to contact Plaintiff, harassing him, and demanding return of the Vehicle. Ultimately, under duress, Plaintiff agreed to return the Vehicle provide his downpayment was refunded and he paid whatever equity was realized in the Trade-In.

26. On December 17, 2022, at Plaintiff's own expense, he shipped the Vehicle from Texas to the Dealer's showroom.

27. By February 2023, Plaintiff's downpayment had not been refunded and his equity in the Trade-In has not been paid, despite Plaintiff's repeated demands. On February 24, 2023, Plaintiff flew from Texas back to New York to personally confront the Dealer. Plaintiff was assured by the Dealer that he would be refunded his money but never was.

28. As a result of the repeated demands for a new transaction, the key terms and costs required to be accurately disclosed under CLA are all materially misstated.

29. At all relevant times the Dealer acted willfully and in bad faith.

30. The unlawful actions described herein harmed Plaintiff.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE CONSUMER LEASING ACT**
(15 .S.C. § 1667 *et. seq*. CLA – Against the Dealer)

31. Plaintiff repeats and re-alleges and incorporates by reference the foregoing paragraphs.

32. Plaintiff is a "lessee" as defined by 15 U.S.C. § 1667(3).

33. The Dealer is a "lessor" as defined by the CLA, 15 U.S.C. § 1667(3).

34. Congress enacted the CLA in 1976 as an amendment to the Truth in Lending Act, 15 U.S.C. §§ 1601, *et seq.* ("TILA"). The CLA extends the TILA's disclosure requirements to consumer leases to "assure a meaningful disclosure of the terms of leases" and allow consumers to compare various lease terms available to them as well as to compare lease terms to available credit terms. 15 U.S.C. § 1601(b).

35. Regulation M, 12 C.F.R. § 1013, et seq., is the CLA's implementing regulation and provides key interpretations of the CLA.

36. Section 1667a of the CLA requires lessors, such as the Dealer, to provide consumers (lessees) with certain disclosures that "accurately and in a clear and conspicuous manner" identify certain information and charges.

37. When a lessor fails to abide by the provisions of the CLA and Regulation M, a consumer may seek damages per 15 U.S.C. § 1640(a) as well as attorney's fees and costs.

38. By failing to provide Plaintiff with any disclosures, much less properly disclose the items required by the CLA, the Dealer violated the CLA and Regulation M. As a result of these violations, Plaintiff is entitled to statutory damages, attorney's fees, and costs.

39. The Dealer is a "lessor" as defined by NY CLS Pers P § 331-3.

40. The Dealer repeated demands to renegotiate the terms of the Lease Agreement rendered the CLA disclosures as stated in the Lease Agreement materially misstated in violation of the CLA and regulation M.

41. The Dealers failed to provide Plaintiff with clear and conspicuous disclosures of the terms of the lease as required under CLA and Regulation M.

42. Had the Dealer provided complete and accurate disclosure of all terms of the Lease Agreement, Plaintiff would not have agreed to lease the Vehicle on the terms and conditions imposed on him by the Dealer.

43. Additionally, had the Dealer provided complete and accurate disclosure of all terms of the Lease Agreement, Plaintiff would have sought and obtained alternate, lower cost leasing.

44. Based on the foregoing, the Dealer is liable under CLA and Regulation M for statutory damages, actual damages, attorney's fees, litigation expenses and costs, for a declaratory judgment that they have violated CLA and Regulation M, and for such other or further relief as the Court deems appropriate.

**SECOND CAUSE OF ACTION**
**<u>VIOLATIONS OF FCRA</u>**

(15 U.S.C. § 1681 *et. seq*. FCRA – Against All Defendants)

45. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

46. Plaintiff is a "consumer," as defined by the FCRA, 15 USC § 1681a(c).

47. Defednants are each a "person," as defined by the FCRA, USC § 1681a(b).

48. Defendants each obtained information regarding Plaintiff from one or more "consumer reporting agency," as defined by the FCRA, 15 USC § 1681a(f) (a "CRA").

49. Defendants each obtained documents (whether in written or electronic form) from one or more CRAs regarding Plaintiff, and said documents are "consumer report[s]," as defined by the FCRA, 15 USC § 1681a(d) (a "Credit Report").

50. Defendants each requested, obtained, used and/or disseminated the Plaintiff's Credit Reports, or information contained therein, without any of the permissible purposes or uses enumerated in the FCRA, 15 USC § 1681b.

51. With the exception of an initial credit application submitted to Affinity, at no time did any Defendant receive the written instructions of Plaintiff to request his consumer report under 15 USC § 1681b(a)(2). Any written instruction expired or was

revoked on the date of the purported consummation of the Lease Agreement, or, at the very latest, upon Affinity's rejection of Plaintiff's credit application.

52. Defendant's actions were intentional and willful.

53. Pursuant to 15 USC § 1681n, any natural person who obtains a consumer report under false pretenses or knowingly without a permissible purpose under 15 USC § 1681b is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure or $1,000.00, whichever is greater; (ii) such amount of punitive damages as the court may allow; and (iii) in the case of any successful action to enforce any liability under 15 USC § 1681n, the costs of the action together with reasonable attorneys' fees.

54. As a result of Defendants' request and receipt of Plaintiff's Credit Reports under false pretenses or knowingly without a permissible purpose, Defendant was each liable to Plaintiff in an amount equal to the sum of (i) any actual damages sustained by Plaintiff as a result of the failure or $1,000.00, whichever is greater; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

55. Pursuant to 15 USC § 1681q and 15 USC § 1681n, any person who knowingly and willfully obtains information on a consumer from a CRA under false pretenses is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100.00 and not more than $1,000.00; (ii) such amount of punitive damages as the court may allow; and (iii) in the case of any successful action to enforce any liability under 15 USC § 1681n, the costs of the action together with reasonable attorneys' fees.

56. As a result of Defendants' knowing and willful request and receipt of information regarding Plaintiff from a CRA under false pretenses, Defendants are each liable to Plaintiff in an amount equal to the sum of (i) any actual damages sustained by Plaintiff as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 for each such violation; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

57. Pursuant to 15 USC § 1681n, any person who willfully fails to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure or damages or not less than $100.00 and not more than $1,000.00; (ii) such amount of punitive damages as the court may allow; and (iii) in the case of any successful action to enforce any liability under 15 USC § 1681n, the costs of the action together with reasonable attorneys' fees.

58. As a result of Defendants' willful failure to comply with the FCRA, Defendants are liable to Plaintiff in an amount equal to the sum of (i) any actual damages sustained by Plaintiff as a result of the failure or damages of not less than $100.00 and not more than $1,000.00 for each such violation; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

59. Pursuant to 15 USC § 1681o, any person who is negligent in failing to comply with any requirement imposed under the FCRA with respect to any consumer is liable to that consumer in an amount equal to the sum of (i) any actual damages sustained by the consumer as a result of the failure and (ii) in the case of any successful action to

enforce any liability under 15 USC § 1681o, the costs of the action together with reasonable attorneys' fees.

60. As a result of Defendants' negligent failure to comply with the FCRA, Defendants are each liable to Plaintiff each in an amount equal to the sum of (i) any actual damages sustained by Plaintiff as a result of said failure and (ii) the costs of this action together with reasonable attorneys' fees.

61. Each Defendants' failure to extend credit to Plaintiff was an "adverse action" within the meaning of the F.C.R.A., 15 U.S.C. § 168la(k).

62. Each Defendants' failure to extend Plaintiff credit was based, at least in part, on information it obtained from Plaintiff's consumer report.

63. Each Defendant knew or had reason to know that it was required to provide Plaintiff with an adverse action notice pursuant to the F.C.R.A., 15 U.S.C. § 168lm.

64. Each Defendant received from one or more consumer reporting agencies a written notice of each Defendants' obligation to provide said adverse action notice to Plaintiff.

65. Each Defendant failed to provide the notice of adverse action required by the F.C.R.A., 15 U.S.C. § 168lm.

66. Each Defendants' actions were intentional and willful or, in the alternative, negligent.

67. As a result of each Defendants' failure to provide the notice of adverse action required by the F.C.R.A., 15 U.S.C. § 168lm, Defendants are each liable to Plaintiff in an amount equal to the sum of (i) any actual damages sustained by Plaintiff as

a result of the failure or damages of not less than $100.00 and not more than $1,000.00 for each such violation; (ii) such amount of punitive damages as the court may allow; and (iii) the costs of this action together with reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**
**DECEPTIVE TRADE PRACTICES**
(N.Y. Gen. Bus. Law § 349(h) – Against the Dealer)

68. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

69. Plaintiff is a person within the meaning of N.Y. Gen. Bus. Law § 349(h) who has been injured by reason of the deceptive acts or practices of the Dealer.

70. Each of the deceptive acts and practices set forth herein constitute violations of NYGBL § 349 independent of whether these acts and practices constitute violations of any other law.

71. Each of these actions was consumer oriented and involves misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

72. Specifically, upon information and belief, the Dealer engages in the prohibited practice of "Spot Delivery" and "Yo-Yo sales" as described herein.

73. Likewise, upon information and belief, the Dealer routinely hides the true cost of borrowing and leasing from its customers by, as in Plaintiff's case, misstating the amounts financed and lease terms.

74. The Dealer's conduct and statements were materially misleading.

75. These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

76. As a result of these violations of NYGBL §349, Plaintiff suffered pecuniary and non-pecuniary harm.

77. Upon information and belief, the Dealer's violations were willful and knowing and committed in bad faith.

78. For these reasons, Plaintiff is entitled to actual damages, three times the actual damages up to $1,000.00, costs and reasonable attorneys' fees pursuant to NYGBL § 349(h), and declaratory judgment that The Dealer's practices are deceptive as defined under § 349.

### FOURTH CAUSE OF ACTION
### COMMON LAW FRAUD

79. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

80. The Dealer asserted false representations of material facts as set forth above, including but not limited to, that Plaintiff had a binding contract, that Plaintiff had been approved for lease of the Vehicle on specific terms, and that Affinity was the lessor.

81. Upon information and belief, the Dealer knew that the representations were false, or the representations were made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to it. This is because, upon information and belief, the Dealer had no intention of being the lessor, knew the Lease Agreement was conditional, knew it intended to take the Vehicle back if it did not get third party financing on terms acceptable to it, and may have had other knowledge and made other representations yet to be determined.

82. The Dealer made these false representations for the purpose of defrauding Plaintiff and to entice him to lease the Vehicle. Had the Dealer told Plaintiff the truth Plaintiff would not have signed the Lease Agreement and would have acquired a vehicle at a dealership where the contract terms were accurate.

83. Plaintiff justifiably relied upon the misrepresentations, reasonably believing he had a deal and had leased a car and that the terms of that deal were clear and final.

84. Plaintiff suffered damages as a direct result of the reliance upon the misrepresentations.

85. Plaintiff believes this is the pattern and practice of the Dealer to lock consumers unknowingly into deals where the Dealer retains the unilateral power to revoke the deal at its whim.

86. The Dealer made these additional false representations:

    a. That a new deal needed to be negotiated as a necessary condition to Plaintiff's retention of the Vehicle after the transaction; and
    b. That the Dealer had the right and authority to repossess the Vehicle if a new deal was not negotiated.

87. The Dealer knew that the representations were false, or the representations were made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to it. This is because the Dealer knew that (1) a new deal was not necessary as a condition to Plaintiff's retention of the Vehicle after the transaction because the Lease Agreement had already been completed; and (2) that the Dealer did not have the right or authority to repossess the Vehicle if Plaintiff did not agree to a new deal.

88. The Dealer made these false representations for the purpose of defrauding Plaintiff and to entice him to return the Vehicle. Had the Dealer told Plaintiff the truth,

14

Plaintiff would have known the Lease Agreement was legally binding and that he had the right to the keep the Vehicle as long as he complied with the obligations under the Lease Agreement.

89. Plaintiff justifiably relied upon the Dealer's misrepresentations.

90. Plaintiff suffered damages as a direct result of the reliance upon the misrepresentations.

**FOURTH CAUSE OF ACTION**
(Conversion – Against the Dealer)

91. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

92. At all times relevant hereto, Plaintiff had the exclusive right of possession to the Trade-In and the Downpayment.

93. When the Dealer refused to return the Trade-In, Plaintiff's equity therein, and the full balance of the Downpayment, with the knowledge that it was revoking the credit terms granted to Plaintiff, the Dealer exceeded its possessory rights without Plaintiff's consent or legal justification.

94. Plaintiff notified the Dealer that it wrongfully converted the Trade-In, Plaintiff's equity therein, and the full balance of the Downpayment.

95. The Dealer acted with deceit, malice, fraud and with reckless disregard for the rights of Plaintiff.

96. The taking and retention of the Trade-In, Plaintiff's equity therein, and the full balance of the Downpayment constitutes an unlawful acquisition of Plaintiff's property by the Dealer.

97. The Dealer's unlawful acquisition was made in conscious disregard of Plaintiff's rights and constitutes willful and/or wanton negligence.

98. By reason of the foregoing, Plaintiff is entitled to a money judgment in an amount to be proven at trial.

**SIXTH CAUSE OF ACTION**
(Breach of Bailment – Against the Dealer)

99. Plaintiff realleges and incorporates each of the above allegations as if fully set forth herein.

100. Plaintiff delivered and entrusted the Trade-In and the Downpayment to the Dealer for the purpose of consummation of the Lease Agreement.

101. A bailment arises where possession, but not ownership, of property is transferred from one party ("bailor") to another ("bailee").  Where a bailee has received a bailment from a bailor, a duty of care is owed.  Typically, a bailee is strictly liable for the bailment.

102. During the period of bailment, the Dealer, as bailee, owed Plaintiff a duty of care to safeguard the Trade-In and the Downpayment. As alleged herein, the Dealer breached this duty.

103. As a result of the Dealer's breach of this duty, Plaintiff has been harmed as alleged herein in an amount to be proven at trial.

**WHEREFORE**, Claimant respectfully requests this Court to enter judgment in its favor and grant the following relief:

1. **On the First Cause of Action:**
   Judgment in favor of Plaintiff and against the Dealer for violating the CLA awarding (a) statutory damages, (b) actual damages (c) costs; (d) reasonable attorneys' fees, and (e) ordering Plaintiff' obligation under the Lease Agreement void;

2. **On the Second Cause of Action:**
   Judgment in favor of Plaintiff and against all Defendants for violating the FCRA awarding (a) statutory damages, (b) actual damages (c) punitive (d) costs; and (e) reasonable attorneys' fees;

3. **On the Third Cause of Action:**
   Judgment in favor of Plaintiff and against the Dealer for violating the NYGBL §349 awarding (a) actual damages, (b) three times the actual damages up to $1,000.00, and (c) costs and reasonable attorneys' fees;

4. **On the Fourth Cause of Action:**
   Judgment in favor of Plaintiff and against the Dealer for fraud awarding actual, exemplary and punitive damages, and attorney's fees and costs;

5. **On the Fifth Cause of Action:**
   Judgment in favor of Plaintiff and against the Dealer for its conversion of the Trade-In in an amount to be proven at trial including, but not limited to, incidental and consequential damages, punitive damages and attorney fees;

6. **On the Sixth Cause of Action:**
   Judgment in favor of Plaintiff and against the Dealer for its breach of duties in an amount to be proven at trial including, but not limited to, incidental and consequential damages, punitive damages and attorney fees;

7. Any additional and further relief as may be deemed just and appropriate.

Dated: Nyack, New York
October 11, 2023

**THE LAW OFFICES OF**
**ROBERT J. NAHOUM, P.C.**
*Attorneys for Plaintiff*

By:_____
**ROBERT J. NAHOUM**
48 Burd Street, Suite 300
Nyack, NY 10960
Telephone No.: (845) 450-2906
Facsimile No.: (888) 450-8640
Email: RJN@NahoumLaw.com